UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELSEVIER, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DIVERSIFIED TECHNOLOGY GROUP, INC. )<br>d/b/a Documentis, )<br>MICHELE ADKINS, and )<br>DANIEL A. ADKINS, )<br>)<br>Defendants. ) | Civil Action No.<br>_____ |

## COMPLAINT

This is an action for infringement of copyrights belonging to plaintiff Elsevier, Inc. ("Elsevier"), in violation of Title 17 of the U.S. Code. Plaintiff complains of defendants as follows:

### Parties

1. Elsevier is a business corporation organized and existing under the laws of Delaware, and having a place of business at 225 Wyman Street, Waltham, Massachusetts 02451. It is engaged in the business of publishing scholarly books and journals in medicine and other fields.

2. Defendant Diversified Technology Group, Inc. ("DTG") is, according to plaintiff's information and belief, a Minnesota corporation with its registered office address at 7430 Xerxes Avenue South, Edina, MN 55423 and a principal place of business at 2 East Franklin Ave., Suite 8, Minneapolis, Minnesota 55404. Under the trade name "Documentis," it is engaged in the business of reproducing and distributing to

1

its customers copies of material published and owned by others, including but not limited to Elsevier.

3. Defendant Michele Adkins is, according to plaintiff's information and belief: a resident of Minnesota, having an address at 7430 Xerxes Avenue South, Edina, MN 55423; President and an owner of defendant DTG; and the wife of defendant Daniel A. Adkins.

4. Defendant Daniel A. Adkins is, according to plaintiff's information and belief: a resident of Minnesota, having an address at 7430 Xerxes Avenue South, Edina, MN 55423; Vice President and an owner of defendant DTG; and the husband of defendant Michele Adkins.

## Jurisdiction and Venue

5. This Court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. §1338(a).

6. This Court has personal jurisdiction over the defendants because they have committed infringement of copyright in this District by causing a copy of Elsevier's copyrighted work to be delivered into the Commonwealth of Massachusetts.

7. Venue is appropriate in this Court under 28 U.S.C. §1400(a) because defendants may be found here, by virtue of their commission of infringement in Massachusetts.

## Facts

8. Elsevier publishes medical books and journals that are sold throughout the world. Among its journals is *The Journal of Pediatrics,* one of the oldest and most distinguished journals in the field of pediatrics, now in its 80th year of publication.

9. *The Journal of Pediatrics* is edited by noted scholars in the field, and much of its content consists of peer-reviewed articles in the field. Each article is written by one or more scientists, generally though not exclusively on the basis of original research.

10. As a matter of standard practice, Elsevier requires that the scientists who contribute articles to its publications assign to it the copyright in those articles. This enables Elsevier to seek out the greatest number of markets for the journal and for its contents, thereby maximizing dissemination.

11. Specifically, but without limitation of the foregoing, Elsevier has secured transfer of copyright from the authors of the article entitled "Add-On Therapy with Subcutaneous Treprostinil for Refractory Pediatric Pulmonary Hypertension," by Marilyne Levy et al. (the "Article"). The Article was published in the April 2011 issue (Vol. 158 No.4) of *The Journal of Pediatrics*.

12. Copyright in the April 2011 issue of *The Journal of Pediatrics* containing the Article was registered in the U.S. Copyright Office and bears the number TX 7-386-220. Such registration includes copyright in the Article because such copyright had been assigned to Elsevier. (Note: registration is in the name of Mosby, Inc., formerly a subsidiary of Elsevier that has been merged into Elsevier.)

13. Defendant DTG is one of a number of commercial companies that offers to provide, on demand, photocopies or digital copies of individual articles from journals, individual chapters from books, and other similar material. These companies are known in the marketplace as "document delivery services."

14. Elsevier derives significant revenue from sale and licensing of individual articles from its publications, both direct to consumers and through intermediaries such as document delivery companies.

15. In order to expand and facilitate both the distribution of its journals and compliance with its copyrights, Elsevier has licensed Copyright Clearance Center, Inc., of Danvers, Massachusetts, a non-profit intermediary ("CCC"), to authorize commercial reproduction of articles from its journals. Under such arrangement, any document delivery service such as DTG can comply with copyright by reporting its copying activities to CCC and paying a copyright fee for each copy made. CCC in turn reports aggregate licensing information to Elsevier, and pays Elsevier the copyright fees collected, less an agreed amount to compensate CCC for its services.

16. Defendants are well aware of this. Their website pays eloquent lip-service to copyright, on its FAQ page:

> **What's the big deal about "copyright compliance?"**
>
> Copyright laws are in place to protect the intellectual property rights of authors, publishers, musicians and anyone else that owns the rights to something they have created. Copyright protection provides both intellectual and financial incentive to those who create and publish the kinds of information that we at Documentis retrieve for our clients. Take away or undermine that incentive, and the quantity and quality of published knowledge would soon be diminished to the detriment of all.
>
> Documentis is a member of the Copyright Clearance Center's Transactional Reporting Service. Documentis also engages in direct licensing with publishers. Document requests are filled in compliance with copyright law and copyright fees will be charged as incurred, per CCC or license guidelines. In the event that a rights holder is not registered with the CCC, or has not granted a license to Documentis, permission can be sought directly from the publisher or rights holder.

See printout from defendants' website attached hereto as Exhibit A.

17. In practice, however, DTG complies with copyright only haphazardly. Sometimes DTG collects no copyright fee; at other times it collects a copyright fee but fails to remit the fee to CCC or the publisher. According to Elsevier's information and belief, DTG's payments to CCC have declined dramatically over the past few years. This fall-off in reporting denotes increasing evasion of copyright, unless attributable to a steep decline in business.

18. Concerned that DTG might be disregarding its copyrights, Elsevier asked two independent parties to test defendants' *bona fides* by ordering from DTG copies of certain journal articles it had published. For the first such test order, made from Maryland, DTG charged a copyright fee but never remitted that fee to CCC or Elsevier. For the second such test order, made from Massachusetts, DTG failed even to charge a copyright fee, instead charging only its standard service fee of $15.00. This second test order was for the Article identified in Paragraph 12 above.

19. DTG delivered a copy of the Article to Elsevier's test orderer on or about April 6, 2012, in .pdf format by email. A copy of its cover email and of the Article, as sent by it, are Exhibit B to this Complaint. (Note: in the cover email DTG identifies itself by its former trade name, "BioDox," which name was recently dropped in favor of "Documentis.")

20. DTG's reproduction of the Article constituted infringement of Elsevier's exclusive right under 17 U.S.C. §106(1) to reproduce the Article. Its delivery of that reproduced copy to Elsevier's test orderer in Massachusetts infringed Elsevier's exclusive right under 17 U.S.C. §106(3) to distribute the Article to the public.

21. Defendants Michele Adkins and Daniel A. Adkins, as officers and owners of DTG, have at all relevant times had the power and authority to direct the actions of DTG and a direct financial interest in the copyright infringement described in this Complaint. Elsevier is informed and believes that each of them is also directly engaged in the reproduction and distribution of journal articles to DTG's customers. They are thus liable as either vicarious infringers, or contributory infringers, or both, with respect to copyright in the Article.

22. Elsevier believes, on the basis of the facts set forth above, that defendants have made hundreds, perhaps thousands of copies of material from Elsevier journals without permission. Elsevier expects to amend this Complaint to add other counts of infringement once it has had the opportunity to examine defendants' records in discovery.

23. Plaintiff has suffered substantial monetary harm from defendants' unauthorized copying. Plaintiff will continue to suffer monetary harm if defendants are permitted to continue their infringing activities. In addition, if defendants are permitted to continue copying material from plaintiff's copyrighted publications, plaintiff will suffer ongoing injury that cannot be quantified in money damages.

WHEREFORE plaintiff prays that this Honorable Court:

A. Issue a preliminary order enjoining defendants, their officers, agents, servants, employees, and attorneys, and all those in active concert with them or participation with them, from all further reproduction and distribution by any means or method of contents from the books, journals, or other publications published by Elsevier, during

the pendency of this litigation, unless such reproduction is authorized by Elsevier or its agent CCC;

B. Issue an order permanently enjoining defendants, their officers, agents, servants, employees, and attorneys, and all those in active concert with them or participation with them, from all further reproduction and distribution by any means or method of contents from the books, journals, or other publications published by Elsevier, unless such reproduction is authorized by Elsevier or its agent CCC;

C. Award Elsevier damages and/or an accounting of profits with respect to defendants' willful infringement, or in the alternative at Elsevier's election award it statutory damage in the maximum amount permitted by law;

D. Award Elsevier its reasonable attorneys' fees, costs of suit and interest; and

E. Award Elsevier such other and further relief as the Court deems just and proper.

ELSEVIER, INC.,
Plaintiff,

By its attorneys,

Dated: August 24, 2012

/s/ William S. Strong
William S. Strong, Esq., BBO #483520
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114
(617) 227-7031
(617) 367-2988 (fax)